**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

HAROLD K. DEVERS,                       :

                                                Case No. 3:09-cv-409

                Plaintiff,

                                                District Judge Timothy S. Black
                                                Magistrate Judge Michael R. Merz

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.                       :

**REPORT AND RECOMMENDATIONS**

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

2

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on August 25, 2004, alleging disability from February 28, 2004, due to leg and hip problems, chronic obstructive pulmonary disease ("COPD"), acid reflux, sleep apnea, and asthma. *See* Tr. 71-73, 416-19; 90. Plaintiff's applications were denied initially and on reconsideration. *See* Tr. 39-40, 420-27. A hearing was held before Administrative Law Judge Thaddeus Armstead, Sr. (Tr. 431-65), who determined that Plaintiff was not disabled. (Tr. 14-32). The Appeals Council denied Plaintiff's request for review, (Tr. 6-9), and Judge Armstead's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Armstead found that he met the insured status requirements of the Act through June, 2008. (Tr. 30, finding 1) and has severe mild chronic obstructive pulmonary disease, sleep apnea, lumbar pain, and obesity, but that he does not have an impairment or combination of impairments that meets or equals the Listings. Tr. 31, finding 3. Judge Armstead found further that Plaintiff has the residual functional capacity to perform a limited range of medium work. *Id.*, finding 5. Judge Armstead then used section 203.29 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and found there is a significant number of jobs in the economy that Plaintiff is capable of performing. *Id.*, findings 10 and 11. Judge Armstead concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 32, finding 12).

Plaintiff presented to the emergency room with complaints of back pain in May 2002. (Tr. 114-19). Plaintiff was treated and discharged. *Id.*

The record contains Plaintiff's treatment notes from family physician Dr. McCutchen

4

dated July, 2002, through August, 2006, which reveal that Dr. McCutchen treated Plaintiff for various medical conditions and complaints including lumbar strain, COPD, GERD, carpal tunnel syndrome, cervical strain, sinus infection, lumbar strain, lumbar osteoarthritis, and bronchitis. (Tr. 259-337, 362-72, 404-06). CT scan of Plaintiff's lumbar spine performed in March, 2003, revealed a questionable disc protrusion and mild facet arthrosis at L5-S1. *Id.*. In June, 2004, Dr. McCutchen reported that Plaintiff could stand or walk up to four hours in an eight-hour workday; that he could sit up to five hours in an eight-hour workday; and that he could lift 20 pounds occasionally. *Id.* Dr McCutchen agreed that Plaintiff could maintain full-time employment. *Id.*

Plaintiff was hospitalized for acute bronchitis with COPD exacerbation in December, 2002. (Tr. 120-22). Plaintiff treated with medication, advised to discontinue smoking cigarettes, and was discharged. *Id.*

A December 10, 2002, spirometry test revealed only mild airflow obstruction. (Tr. 221). A December 31, 2002, chest x-ray showed no evidence of acute abnormality, (Tr. 130-31), and a myocardial perfusion study in January, 2003, revealed no evidence of ischemia. (Tr. 149).

Plaintiff attended physical therapy various times from March, 2003, through August, 2004, for treatment of lumbar spine strain. (Tr. 168-91). Plaintiff's therapist noted on August 26, 2004, that Plaintiff had made inconsistent progress with overall improvement although Plaintiff continued to report functional deficits. *Id.*

Consulting neurosurgeon Dr. Goodall reported on October 17, 2004, that he saw Plaintiff on April 14, 2003, for a lumbar spine complaint attributed to injury sustained in an automobile accident. (Tr. 192-97). Dr. Goodall also reported that Plaintiff complained of lumbar spine pain, exhibited diffuse nondermatomal decreased perception to pinprick throughout the left

5

upper extremity, had decreased range of motion in the cervical region, and that he could forward bend to 80 degrees, extend 30 degrees, and laterally flexed bilaterally 30 degrees. *Id.* Dr. Goodall noted that Plaintiff exhibited mild lumbar and mild cervical paraspinal reactivity present and was able to straight leg raise to 70 degrees on the right and to 50 degrees on the left with lumbar spine pain. *Id.* Dr. Goodall opined that Plaintiff's back pain complaints were due to spinal sprain/strain with only mild degenerative abnormality at L5-S1. *Id.* In June, 2004, Dr. Goodall reported that Plaintiff's prognosis was "good", he was not precluded from working on a full-time basis because of his condition, and that Plaintiff was able to stand and walk for four hours in an eight-hour workday; sit for eight hours in an eight-hour workday, lift up to ten pounds, grip and manipulate with his hands, and that he was able to occasionally bend, squat, and push/pull. *Id.*

In April, 2003, Plaintiff underwent testing for obstructive sleep apnea and was subsequently treated with C-PAP therapy. (Tr. 213-15). When Plaintiff was seen in follow-up in December, 2004, it was noted that he had gained approximately 40 pounds and that despite having COPD, Plaintiff continued to smoke heavily. *Id.*

Plaintiff presented to the emergency room following a motor vehicle accident in May, 2004. (Tr. 139-48). An x-ray of Plaintiff's lumbar spine was negative. *Id.* Plaintiff was treated and released. *Id.* A May 20, 2004, follow-up CT scan of the lumbar spine was normal. (Tr. 329).

In July, 2004, Plaintiff sought emergency room treatment for complaints of shortness of breath, which was attributed to asthma. (Tr. 150-61). At that time, it was noted that Plaintiff was still smoking about a half pack of cigarettes a day. *Id.* Plaintiff was treated and released. *Id.*

An EMG of Plaintiff's lumbar paraspinals and lower limbs which was performed in July, 2004, revealed mild, but distinct, bilateral S1 spinal nerve root injuries (mild bilateral S1

radiculopathies), and gave no evidence of a concurrent lumbar plexopathy, focal peripheral nerve entrapment syndrome, generalized neuropathy or primary muscle disease. . (Tr. 163). Dr. Porter, the physician who administered the EMG, reported that Plaintiff might be a candidate for traction in physical therapy. *Id.*

Examining physician Dr. Padamadan reported on November 23, 2004, that Plaintiff's chief complaints included asthma, low back pain, a bleeding ulcer, and a 5% to 10% disability due to his right shoulder. (Tr. 198-212). An x-ray of the lumbar spine performed in conjunction with Dr. Padamadan's examination was negative and a pulmonary function test revealed moderate COPD. *Id.* Dr. Padamadan described Plaintiff's effort on this test as "poor" and "submaximal." *Id.* Dr. Padamadan reported further that Plaintiff was sixty-six inches tall and weighing two hundred-fifty pounds, did not require an ambulatory aid, his range of motion of his neck was normal, and that his grip strength was intact. *Id.* Dr. Padamadan also reported that Plaintiff had no chest wall deformities, his breath sounds were normal, he had "excellent mobility" of his right shoulder which exhibited no muscle atrophy, and that his ranges of motion of the hips, knees, and ankles were all good. *Id.* Dr. Padamadan noted that Plaintiff was able to walk on his heels and toes and that he had no edema in his lower extremities. *Id.* Dr Padamadan identified Plaintiff's diagnoses as obesity, history of COPD, low back pain (without any objective findings), and "right shoulder disability without any objective findings of functional impairment." *Id.* Dr. Padamadan opined that Plaintiff's upper extremity functions for reaching, handling, fine, and gross movements were intact and Dr. Padamadan concluded that "[b]ased upon this clinical evaluation, in the absence of objective findings of any functional impairment, I do not see any indication for limitation of physical activities, except that he should quit smoking and may need environmental restrictions such as [no]

7

exposure to chemicals, dust, and fumes." *Id.*

Consulting physician, Dr. Gilliotte, reported in January, 2005, that Plaintiff's gait was antalgic, but that he ambulated without an assistive device, and that he was able to heel and toe walk, perform tandem gait activities, and do deep knee bending with return to a standing position. (Tr. 224-25). *Id.* Dr. Gilliotte also reported that Plaintiff's straight-leg-raise testing was positive on the left and that his muscle strength was full. *Id.* Dr. Gilliotte recommend a pain management program, such as pain blocks. *Id.*

A chest x-ray performed in January, 2005, revealed that Plaintiff's lung volumes were within normal limits, that there were no infiltrates or masses, hilar regions were within normal limits, the cardiac silhouette appeared normal, and that here was no evidence of pleural disease. (Tr. 220).

An EMG performed on May 27, 2005, revealed evidence of bilateral median neuropathy suggestive of carpal tunnel syndrome with no convincing evidence of radiculopathy. (Tr. 239-40).

A June 20, 2005, CT scan of Plaintiff's cervical spine was negative. (Tr. 238).

Dr. Smith of the Miami Valley Hospital Pain Center reported on June 28, 2005, that Plaintiff was sixty-eight inches tall and weighed two-hundred sixth three pounds, reported he had COPD, sleep apnea, past heart attack, chronic heartburn, arthritis, and a stomach ulcer. (Tr. 234-36). Dr. Smith also reported that Plaintiff had 5/5 muscle strength, 2+ reflexes bilaterally, normal sensation to light touch, no tenderness over the cervical or thoracic spine, and complaints of diffuse pain in his lumbar back radiating to his lower extremities. *Id.* Dr. Smith opined Plaintiff's back pain was caused by lumbar myofascial pain syndrome and cervical myofascial pain syndrome as residual

effects of multiple motor vehicle accidents. *Id.*

An August, 2005, MRI scan of Plaintiff's lumbosacral spine revealed no significant abnormality such as disc bulge, disc herniation, spinal canal stenosis, or foraminal stenosis. (Tr. 237).

Cardiologist Dr. Lytle reported in November, 2005, that Plaintiff had been doing "fairly well." (Tr. 358). Dr. Lytle noted that Plaintiff reported that he had experienced one episode of palpitations when he was in Chicago, that he had been feeling "very good," but that he continued to smoke. *Id.*

A chest x-ray performed on December 12, 2005, revealed Plaintiff's cardiomediastinal silhouette and pulmonary vasculature were unremarkable, his lungs were well expanded with no focal acute infiltrate, his pleural spaces were clear and that there was no evidence of acute pulmonary disease process. (Tr. 255).

Plaintiff underwent a cardiac catheterization in January, 2006, which revealed a normal left ventricle, normal coronary arteries, and no evidence of significant coronary artery stenosis. (Tr. 348-49).

Dr. McCutchen reported on March 27, 2006, that Plaintiff's health status was "improving with treatment", that Plaintiff was able to lift twenty pounds occasionally and ten pounds frequently, was able to sit up to four hours during an eight-hour workday, and that he was able to stand or walk for two and one-half hours in an eight-hour workday. (Tr. 359-61). Dr. McCutchen concluded that Plaintiff was "unemployable" and unable to do even sedentary work on a regular and continuing basis and he attributed Plaintiff's inability to work to his pain associated with lumbar strain. *Id.*

9

The record contains treatment notes from Dr. Brunsman dated from September to December, 2006, which reveal that Dr. Brunsman treated Plaintiff for various conditions and complaints including low back pain, cough, sleeplessness, carpal tunnel syndrome, and ear aches. (Tr. 374-401). In November, 2006, Dr. Brunsman reported that Plaintiff was "unable to work until back pain is controlled" and in April, 2007, Dr. Brunsman reported that Plaintiff could work as many as eight hours per day, if he were allowed to alternate between sitting and standing. (Tr. 402-03). Dr. Brunsman also reported Plaintiff could perform part-time work. *Id.* Dr Brunsman opined that Plaintiff was able to lift up to twenty pounds occasionally and ten pounds frequently and that he was unable to work until his back pain was controlled. *Id.*

MRIs of the lumbar spine and cervical spine performed in November, 2006, were both negative. (Tr. 394-98).

Dr. Lytle reported on December 12, 2006, that Plaintiff weighed two-hundred seventy-four pounds, his heart rate and rhythm were regular, there was no evidence of heart murmur, and that examination of Plaintiff's lungs revealed wheezing bilaterally. (Tr. 373). Dr. Lytle advised Plaintiff to discontinue smoking, increase, his exercise capacity, and eliminate caffeine from his diet. *Id.*

Plaintiff alleges in his Statement of Errors that the Commissioner erred in his evaluation of medical source opinions, particularly treating physicians Drs. McCutchen and Brunsman and reviewing physician Dr. Das. (Doc. 7). Plaintiff also argues that because the Commissioner improperly weighed the medical source opinions, his finding that Plaintiff could perform a limited range of medium work is in error. *Id.*

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ

must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544*.* "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406, *citing, Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07, *citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253

12

(6th Cir. 2007)(emphasis in original).

Judge Armstead declined to give controlling or deferential weight to Dr. McCutchen's and Dr. Brunsman's opinions on the bases that they are not supported by substantial evidence in the record and based on uncritical acceptance of Plaintiff's subjective complaints and allegations. (Tr. 23).

As noted above, Dr. McCutchen essentially opined in June 2004 that Plaintiff was able to stand or walk up for four hours in an eight-hour day, sit for five hours in an eight-hour day, and occasionally lift up to twenty pounds; he opined Plaintiff was able to maintain full-time employment. Although Dr. McCutchen opined in March, 2006, that Plaintiff was "unemployable" and unable to do even sedentary work on a regular and continuing basis, as Judge Armstead noted, Dr. McCutchen described Plaintiff's health status as "improving with treatment." Additionally, Dr. McCutchen provided few, if any, objective findings to support his opinion. Further, Dr. McCutchen's treatment notes contain few, if any clinical findings which support his opinion that Plaintiff is disabled. Moreover, Dr. McCutchen's opinion is not supported by the objective test results. For example, a March, 2003, lumbar CT scan showed only mild abnormality, a May, 2004, lumbar x-ray was negative, a May, 2004, CT scan was normal, and a July 2004 EMG was only "mildly" abnormal and showed no evidence of lumbar plexopathy, nerve entrapment, neuropathy or muscle disease.

Similarly, Judge Armstead found Dr. Brunsman's opinions were internally inconsistent and did not support a conclusion that Plaintiff is rendered disabled from all manner of competitive employment. (Tr. 21). Although Dr. Brunsman opined in November, 2006, that Plaintiff was "unable to work until back pain is controlled", he had been treating Plaintiff for only

two months when he offered that opinion. Five months later inn April 2007, Dr. Brunsman reported that Plaintiff could work as many as eight hours per day, if he were allowed to alternate between sitting and standing. As Judge Armstead noted, despite Dr. Brunsman's opinion, he failed to provide Plaintiff with any additional treatment measures.

Dr. McCutchen's and Dr. Brunsman's opinions are also inconsistent with the other evidence including the clinical findings reported by consulting physicians Dr. Goodall and Dr. Padamadan. Finally, Dr. McCutchen's and Dr. Brunsman's opinions are inconsistent with the reviewing physician's opinion. (Tr. 226-33).

Under these facts, the Commissioner had an adequate basis for rejecting Dr. McCutchen's and Dr. Brunsman's opinions that Plaintiff is disabled. In addition, the Commissioner had an adequate basis for relying, instead, on the opinion of the reviewing physician which is consistent with the reports and findings of the examining physicians.

Plaintiff also argues that the Commissioner has not met his burden of proof at step five. However, this contention lacks merit because Plaintiff has not shown that Judge Armstead's assessment of his residual functional capacity was based on legal error or unsupported by substantial evidence. As a result, the vocational expert's testimony addressing a hypothetical person with these limitations and abilities, which incorporated Judge Armstead's residual functional capacity constituted substantial evidence to support his conclusion at step 5 of the sequential analysis. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003), citing *Varley v. Sec. of Health & Human Services*, 820 F.2d 777, 779 (6th Cir.1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert....").

Our duty on appeal is not to re-weigh the evidence, but to determine whether the

decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

October 4, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).